PLUNKETT v DEPARTMENT OF TRANSPORTATION

Docket No. 284320. Submitted September 9, 2009, at Lansing. Decided November 3, 2009, at 9:15 a.m.

Jerome Plunkett, as the personal representative of the estate of his wife, Holly M. Plunkett, brought an action in the Ingham Circuit Court against the Department of Transportation, seeking wrongful-death damages after her single-car accident on a state highway. The department moved for summary disposition on the grounds of governmental immunity. The court, James R. Giddings, J., denied the motion, concluding that Plunkett's presuit notice sufficiently described the nature of the defect in the highway and that Plunkett had alleged a persistent defect that in combination with the rain falling at the time of the accident created an unsafe situation. The department appealed.

The Court of Appeals *held*:

1. To bring a claim under the highway exception to governmental immunity, an injured person must timely notify the governmental agency having jurisdiction over the highway of the occurrence of the injury, the injury sustained, the exact location and nature of the defect in the roadway, and the names of known witnesses. The principal purposes to be served by requiring notice are (1) to provide the governmental entity with an opportunity to investigate the claim while it is still fresh and (2) to remedy the defect before other persons are injured. When notice is required of an average citizen for the benefit of a governmental agency, it need only be understandable and sufficient to bring the important facts to the governmental entity's attention. A liberal construction of the notice requirements is favored to avoid penalizing an inexpert layperson for some technical defect. A court should not hold a notice ineffective when it is in substantial compliance with the law. A court may consider the description of the nature of the defect as substantially complying with the statute when coupled with the specific description of the location, time, and nature of the injuries. Although Plunkett's notice did not specifically mention that the accident was allegedly caused by rutting of the road or an inadequate superelevation of the highway, it adequately described

the location and defect to the extent that it reasonably apprised the department of Plunkett's claims.

2. The trial court erred by denying the department's summary disposition motion. Under the highway exception to governmental immunity, the only permissible claims are those arising from a defect in the roadbed itself, and the exception does not extend to claims based on defective design or accumulations of ice and snow. With respect to accumulations of ice or snow, there must have been a combination of ice or snow and a defect that, in tandem, proximately caused the accident. In the absence of a persistent defect in the highway that rendered it unsafe for public travel at all times and that combined with the natural accumulation of ice, snow, or water, a plaintiff cannot prevail against an otherwise immune municipality. One prong of Plunkett's theory of recovery was premised on a claimed design defect that did not adequately allow water to drain off the roadbed. The second prong of his theory claimed that rutting defects in the physical structure of the roadbed surface, along with the pooled water, proximately caused the accident. The evidence, however, supported a conclusion that the rutting was not at all times a persistent defect of which the department should have had notice. Plunkett submitted nothing to show that his wife lost control of her vehicle for any reason other than hydroplaning.

Affirmed in part, reversed in part, and remanded for entry of summary disposition for the department.

1. GOVERNMENTAL IMMUNITY — HIGHWAY EXCEPTION — NOTICE — DEFECTS IN HIGHWAYS.

To bring a claim under the highway exception to governmental immunity, an injured person must timely notify the governmental agency having jurisdiction over the roadway of the occurrence of the injury, the injury sustained, the exact location and nature of the defect, and the names of known witnesses; the notice need not be in a particular form, and it is sufficient if the notice is timely and contains the requisite information; a court may consider a plaintiff's description of the nature of the defect as substantially complying with the statute when coupled with the specific description of the location, time, and nature of the injuries (MCL 691.1404[1]).

2. NOTICE — GOVERNMENTAL ENTITIES — REQUIREMENTS — ADEQUACY.

When notice is required of an average citizen for the benefit of a governmental entity, it need only be understandable and sufficient to bring the important facts to the governmental entity's atten-

tion; a court should construe the notice requirements liberally to avoid penalizing an inexpert layperson for a technical defect; a court should not find a notice ineffective when it is in substantial compliance with the law; some degree of ambiguity in an aspect of a particular notice may be remedied by the clarity of other aspects.

3. GOVERNMENTAL IMMUNITY — HIGHWAY EXCEPTION — DEFECTS IN HIGHWAYS — PROXIMATE CAUSE OF INJURY — ACCUMULATIONS OF ICE, SNOW, OR WATER.

A defect in a highway that simply causes the accumulation of ice, snow, or water is not sufficient to sustain an action by an injured plaintiff under the highway exception to governmental immunity; the plaintiff must show that the ice, snow, or water in tandem with a persistent defect in the highway that rendered it unsafe for public travel at all times proximately caused the injury (MCL 691.1402[1]).

*Fieger, Fieger, Kenney, Johnson & Giroux, P.C.* (by *Victor S. Valenti*), for plaintiff.

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, and *John P. Mack*, Assistant Attorney General, for defendant.

Before: SAAD, C.J., and WHITBECK and ZAHRA, JJ.

PER CURIAM. In this governmental immunity highway exception case, defendant, the Michigan Department of Transportation (MDOT), appeals as of right the trial court's order denying MDOT summary disposition under MCR 2.116(C)(7). This case arises out of a single-motor-vehicle accident in which plaintiff Jerome Plunkett's wife, decedent Holly Marie Plunkett,[1] died after losing control of her vehicle, causing her vehicle to leave the roadway and strike a tree. We affirm in part and reverse in part.

---

[1] Because Jerome Plunkett is bringing this claim on behalf of Holly Plunkett's estate, any reference to "Plunkett" will refer to Jerome Plunkett unless otherwise indicated.

I. BASIC FACTS AND PROCEDURAL HISTORY

On May 19, 2005, at approximately 8:30 p.m., Holly Plunkett was driving her minivan south on US-127 in Clare County, at or near Bailey Road in Frost Township. The posted speed limit was 70 miles an hour, and data allegedly taken from the vehicle's diagnostic module reflected that Holly Plunkett was traveling 77 miles an hour when she lost control of the vehicle, which then struck a tree on the west side of the highway. At the time and place of the accident, it was raining and the road surface was wet. The injuries Holly Plunkett sustained as a result of the accident caused her immediate death.

In September 2005, Plunkett filed his presuit notice of claim, which alleged that a defect existed on US-127 that led to Holly Plunkett's accident.[2] Shortly thereafter, Plunkett filed suit in the Court of Claims as personal representative of the estate of Holly Marie Plunkett, specifically invoking the highway exception to governmental immunity[3] in an effort to seek damages "as allowed by Michigan's Wrongful Death Statute, MCL 600.2922 . . . ." In his third amended complaint, Plunkett alleged that Holly Plunkett "suddenly and unexpectedly lost control of her vehicle due to the dangerous and defective conditions which existed on/at the actual physical structure of the roadbed surface of the highway at issue, causing Mrs. Plunkett's death." More specifically, Plunkett alleged that

> [a]s a direct and proximate result of [MDOT's] failure to maintain the highway at issue in reasonable repair and in a condition reasonably safe and fit for public/vehicular travel, defects in the actual physical of the roadbed [sic]

---

[2] See MCL 691.1404.

[3] MCL 691.1402(1); MCL 691.1407(1).

surface of said highway, designed for vehicular travel, allowed an unnatural accumulation of rainfall to pool/collect.

Plunkett alleged that Holly Plunkett's vehicle "hydroplaned on the defective and dangerous roadway surface, causing loss of control of said vehicle . . . ."

According to Plunkett, the portion of the highway at issue was initially designed and built correctly and "in a condition reasonably safe and fit for vehicular/public travel at all times," but it later fell into disrepair, "which caused the actual physical structure of the roadbed's surface to thereafter contain substantially dangerous and defective conditions . . . ." Plunkett alleged that the

general purpose for the MDOT super-elevation and cross-slope/crown specifications on the actual physical structure of roadbed surface [sic] of the highway at issue, designed for public/vehicular travel, is to reduce or eliminate wet weather skidding accidents by maintaining zero water depth on the roadbed surface during a normal rainfall.

However, Plunkett alleged, "1999 and/or 2001 micro surfacing projects negligently altered the cross-slope/crown and/or super-elevation of the highway at issue from the proper cross-slope/crown and/or super-elevation of the 1990 construction" because a uniform thickness was not applied and the "cross-slope/crown and/or super-elevation" then became inadequate.

Plunkett alleged that, at the time of the accident, the "actual physical structure of the roadbed's surface . . . was . . . substantially hazardous and defective, not properly maintained, and/or not in reasonable repair and in a condition reasonably safe and fit for public/vehicular travel" because of "excessive wheel track rutting," "uneven gradient due to excessive wear," "excessive wear," "inadequate cross-slope/crown," and "inadequate super-elevation[.]" Plunkett alleged that these defects in the

physical structure of the roadbed surface proximately caused Holly Plunkett's vehicle to "become imbalanced." However, Plunkett also alleged that these defects in the physical structure of the roadbed surface "caused rainfall to unnaturally collect and pool/stand on the roadway's surface in excessive and dangerous amounts when it rained." According to Plunkett, the defects in the physical structure of the roadbed surface, "with the unnaturally pooled water and/or rainfall, proximately caused [Holly] Plunkett's accident." And he alleged that

[a]t least 30 days prior to and at the time of the accident, the actual physical structure of the roadbed surface of the highway at issue, designed for public/vehicular travel, was substantially defective and hazardous, and not in reasonable repair and in a condition reasonably safe and fit for public/vehicular travel at all times during and after rainfall due to the aforementioned dangerous and defective conditions in the roadbed surface.

Plunkett further alleged that, at least 30 days before and at the time of the accident, MDOT "knew, or after the exercise of due diligence should have known," about the defective conditions, "which needed to be repaired."

In November 2007, MDOT filed its third motion for summary disposition under MCR 2.116(C)(7), arguing that Plunkett had failed to plead a cause of action in avoidance of governmental immunity, that Plunkett had failed to perfect his claim with proper presuit notice, and that the damages recoverable by Plunkett were restricted to those specifically allowed under MCL 691.1402(1). After hearing oral arguments on the motion, the trial court denied the motion, finding that Plunkett's presuit notice sufficiently described the nature of the defect; that Plunkett had properly pleaded in avoidance of governmental immunity by alleging that there was a persistent defect in the highway that, in

combination with the falling rain, created an unsafe situation; and that Plunkett was entitled to recover wrongful death act damages for loss of companionship and society. The trial court entered a formal written order in March 2008.

MDOT now appeals as of right the trial court's denial of its motion for summary disposition.[4]

## II. MCL 691.1404 PRESUIT NOTICE

### A. STANDARD OF REVIEW

MDOT argues that the trial court erred by denying MDOT summary disposition because Plunkett's claim, that an inadequate superelevation or rutting of the highway surface constituted the alleged "defect," is barred because MDOT was not given sufficient presuit notice of that specific condition as required by MCL 691.1404. According to MDOT, the notice did not contain a strictly accurate or correct identification of the alleged highway defect.

We review de novo a trial court's ruling on a motion for summary disposition.[5] Further, the proper interpretation of a statute is a question of law subject to our de novo review.[6]

---

[4] See MCR 7.203(A)(1) (stating that this Court "has jurisdiction of an appeal of right filed by an aggrieved party from . . . [a] final judgment or final order of the circuit court, or court of claims"); MCR 7.202(6)(a)(v) (stating that in a civil case, a "final judgment" or "final order" means "an order denying governmental immunity to a governmental party, including a governmental agency, official, or employee under MCR 2.116[C][7]"); *Costa v Community Emergency Med Services, Inc,* 475 Mich 403, 413; 716 NW2d 236 (2006).

[5] *Tillman v Great Lakes Truck Ctr, Inc,* 277 Mich App 47, 48; 742 NW2d 622 (2007).

[6] *Putkamer v Transamerica Ins Corp of America,* 454 Mich 626, 631; 563 NW2d 683 (1997).

As stated previously, in September 2005, Plunkett filed his presuit notice of claim, which alleged that a defect existed on US-127 that led to Holly Plunkett's accident. The notice stated, in pertinent part:

> Please accept this letter as notice of intention to file a claim against the Michigan Department of Transportation on behalf of our clients in connection with an incident that occurred on May 19, 2005, at approximately 8:30 p.m. on Southbound US-127, at or near Bailey Road, Clare County, Michigan.
>
> The claim arose when Holly Marie Plunkett struck standing/pooled water on the roadway's surface while driving, which then caused her vehicle to hydroplane out of control and strike a tree on the west side of the roadway. The standing/pooled water on the roadway was caused by excessive and uneven wear, and/or lack of drainage due to uneven and unreasonable wear, and/or failure to maintain the roadway in a reasonably safe manner.

A police report regarding Holly Plunkett's accident was attached to the notice. The report stated that "[i]t was raining hard at the time, there was some standing water on the roadway where the vehicle tires travel . . . ." The report suggested that Holly Plunkett lost control of her vehicle "possibly from hydro-planing [sic] . . . ." A second police report described the location of the accident:

> The section of US-127 where the incident occurred has a long curve going from the southwest to the south. Just prior to where the vehicle left the roadway the road straightens out to the south. . . .
>
> *   *   *
>
> At the scene of the accident there was a guard rail on the east side of the roadway that started approx 40 yds prior to

the accident scene. The guard rail on the west side of the roadway started adjacent to the point of impact of the incident. There is a bridge that goes over a swamp just south of the scene.

### C. APPLICABLE LEGAL PRINCIPLES

To bring a claim under the highway exception to governmental immunity, an injured person must timely notify the governmental agency having jurisdiction over the roadway of the occurrence of the injury, the injury sustained, "the exact location and nature of the defect," and the names of known witnesses.[7] The notice need not be provided in a particular form. It is sufficient if it is timely and contains the requisite information.[8]

The Michigan Supreme Court has established that "MCL 691.1404 is straightforward, clear, unambiguous, and not constitutionally suspect" and "must be enforced as written."[9] However, when notice is required of an average citizen for the benefit of a governmental entity, it need only be understandable and sufficient to bring the important facts to the governmental entity's attention.[10] Thus, a liberal construction of the notice requirements is favored to avoid penalizing an inexpert layman for some technical defect.[11] The principal purposes to be served by requiring notice are simply (1) to provide the governmental agency with an opportunity

---

[7] MCL 691.1404(1); *Rowland v Washtenaw Co Rd Comm*, 477 Mich 197, 200, 203-204, 219; 731 NW2d 41 (2007).

[8] *Burise v City of Pontiac*, 282 Mich App 646, 654; 766 NW2d 311 (2009).

[9] *Rowland*, 477 Mich at 219.

[10] *Brown v City of Owosso*, 126 Mich 91, 94-95; 85 NW 256 (1901).

[11] *Meredith v City of Melvindale*, 381 Mich 572, 579; 165 NW2d 7 (1969).

to investigate the claim while it is still fresh and (2) to remedy the defect before other persons are injured.[12]

" ' "[T]he requirement should not receive so strict a construction as to make it difficult for the average citizen to draw a good notice . . . ." ' "[13] "[A] notice should not be held ineffective when in '*substantial compliance* with the law . . . .' "[14] A plaintiff's description of the nature of the defect may be deemed to substantially comply with the statute when "[c]oupled with the specific description of the location, time and nature of injuries . . . ."[15] " 'Some degree of ambiguity in an aspect of a particular notice may be remedied by the clarity of other aspects.' "[16]

### D. ANALYSIS

MDOT argues that MCL 691.1404(1) requires a "strictly accurate or correct description of the alleged defective condition." Therefore, MDOT contends, Plunkett was required to specifically mention that the accident was allegedly caused by rutting or an inadequate superelevation. MDOT relies on two unpub-

[12] *Hussey v Muskegon Hts*, 36 Mich App 264, 267-268; 193 NW2d 421 (1971); see *Lawson v City of Niles*, unpublished opinion per curiam of the Court of Appeals, issued January 8, 2009 (Docket No. 280797), p 2.

[13] *Kustasz v Detroit*, 28 Mich App 312, 315; 184 NW2d 328 (1970), quoting *Meredith*, 381 Mich at 579, quoting *Brown*, 126 Mich at 94-95.

[14] *Smith v City of Warren*, 11 Mich App 449, 455; 161 NW2d 412 (1968), quoting *Ridgeway v City of Escanaba*, 154 Mich 68, 73; 117 NW 550 (1908) (emphasis added).

[15] *Jones v Ypsilanti*, 26 Mich App 574, 584; 182 NW2d 795 (1970); see also *Barribeau v Detroit*, 147 Mich 119, 125; 110 NW 512 (1907) ("In determining the sufficiency of the notice . . . the whole notice and all of the facts stated therein may be used and be considered to determine whether it reasonably apprises the officer upon whom it is required to be served of the place and the cause of the alleged injury.").

[16] *Jones*, 26 Mich App at 584, quoting *Smith*, 11 Mich App at 455.

lished cases in support of its contention, *Botsford v Clinton Charter Twp*[17] and *Chambers v Wayne Co Airport Auth.*[18] However, in addition to having no precedential value,[19] those cases dealt with different statutory provisions, and we are not bound to extend their reasoning to the statute at issue in this case.[20]

Published caselaw applying MCL 691.1404(1) does not support MDOT's interpretation. Indeed, this Court has stated that "a notice of injury and defect will not be regarded as insufficient because of a failure to comply literally with all the stated criteria. Substantial compliance will suffice."[21] Therefore, all that is required to create a legally sufficient notice is that the plaintiff substantially comply with the notice requirement, and the description of the nature of the defect may be deemed to substantially comply with the statute when "[c]oupled with the specific description of the location, time and nature of injuries . . . ."[22]

Taken as a whole, Plunkett's notice reasonably apprised MDOT of the nature of the defect. Although it did not use the words "rutting" or "superelevation," it adequately described the location and nature of the defect to the extent that it "reasonably apprise[d]"[23] MDOT of Plunkett's claims. Plunkett's statement that the "standing/pooled water on the roadway was caused

---

[17] *Botsford v Clinton Charter Twp*, unpublished opinion per curiam of the Court of Appeals, issued March 20, 2007 (Docket No. 272513).

[18] *Chambers v Wayne Co Airport Auth*, unpublished opinion per curiam of the Court of Appeals, issued June 5, 2008 (Docket No. 277900).

[19] MCR 7.215(C)(1) ("An unpublished opinion is not precedentially binding under the rule of stare decisis.").

[20] See *Henry v Dow Chem Co*, 484 Mich 483, 500; 772 NW2d 301 (2009).

[21] *Hussey*, 36 Mich App at 269.

[22] *Jones*, 26 Mich App at 584; see also *Rule v Bay City*, 12 Mich App 503, 507-509; 163 NW2d 254 (1968).

[23] *Barribeau*, 147 Mich at 125.

by excessive and uneven wear, and/or lack of drainage due to uneven and unreasonable wear" along with the police report's description of location was sufficient to bring the defect to MDOT's attention.[24] Indeed, this Court has upheld even less detailed descriptions.[25]

Accordingly, we conclude that the trial court did not err by denying MDOT's motion for summary disposition when Plunkett's presuit notice substantially complied with the notice requirements and reasonably apprised MDOT of the nature of the defect.

### III. HIGHWAY DEFECT EXCEPTION

#### A. STANDARD OF REVIEW

MDOT argues that the trial court erred by denying its third motion for summary disposition because there was no actionable highway defect in this case. MDOT argues that, according to the uncontested national standards for maintaining asphalt pavement, the ruts in the roadbed surface had not reached a sufficient depth to alert a reasonable highway authority that the condition, if not repaired, would unreasonably endanger public travel. Moreover, MDOT asserts, the presence of pooling water on the roadbed is not, by itself, an actionable defect, and the condition of the roadbed surface that allowed the water to remain on the surface did not itself cause the loss of control and injury. MDOT argues that it was not required to design and maintain its highway so

---

[24] See *Brown*, 126 Mich at 94-95.

[25] See *Hussey*, 36 Mich App at 268 (concluding that the plaintiffs' "description of the defect as a 'defect in the sidewalk' in front of 2042 Peck Street is adequate"); *Jones*, 26 Mich App at 583-584 (finding substantial compliance when the notice described the defect as "defective sidewalk immediately east of 5 West Michigan Avenue which is located on the south side of Michigan Avenue").

that no water pools or accumulates on the surface. MDOT maintains that liability under the highway exception may not attach for such transient conditions as rain, snow, or ice—the condition must pose an unreasonable hazard to safe public travel "at all times."

MCR 2.116(C)(7) provides that a motion for summary disposition may be raised on the ground that a claim is barred because of immunity granted by law. To survive a (C)(7) motion raised on these grounds, the plaintiff must allege facts warranting the application of an exception to governmental immunity.[26] Neither party is required to file supportive material; any documentation that is provided to the court, however, must be admissible evidence.[27] The plaintiff's well-pleaded factual allegations must be accepted as true and construed in the plaintiff's favor, unless the movant contradicts such evidence with documentation.[28]

We review de novo the applicability of governmental immunity.[29] Determination of the applicability of the highway exception is a question of law subject to our de novo consideration on appeal.[30] Further, the proper interpretation of a statute is a question of law subject to our de novo review.[31]

---

[26] *Kendricks v Rehfield,* 270 Mich App 679, 681; 716 NW2d 623 (2006); *Smith v Kowalski,* 223 Mich App 610, 616; 567 NW2d 463 (1997).

[27] *Maiden v Rozwood,* 461 Mich 109, 119; 597 NW2d 817 (1999).

[28] MCR 2.116(G)(5); *Maiden,* 461 Mich at 119; *Smith,* 223 Mich App at 616.

[29] *Herman v Detroit,* 261 Mich App 141, 143; 680 NW2d 71 (2004); *Baker v Waste Mgt of Michigan, Inc,* 208 Mich App 602, 605; 528 NW2d 835 (1995).

[30] *Robinson v City of Lansing,* 282 Mich App 610, 613; 765 NW2d 25 (2009).

[31] *Putkamer,* 454 Mich at 631.

B. APPLICABLE LEGAL PRINCIPLES

The governmental immunity act[32] provides "broad immunity from tort liability to governmental agencies whenever they are engaged in the exercise or discharge of a governmental function[.]"[33] Here, there is no dispute that US-127 is a state trunkline highway within MDOT's jurisdiction as a state agency and that the repair and maintenance of such public highways is a governmental function.[34] However, the governmental immunity act sets forth several narrowly construed exceptions to immunity,[35] including liability for damages caused by an unsafe highway.[36]

The highway exception to governmental immunity provides, in pertinent part:

> [E]ach governmental agency having jurisdiction over a highway shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel. A person who sustains bodily injury or damage to his or her property by reason of failure of a governmental agency to keep a highway under its jurisdiction in reasonable repair and in a condition reasonably safe and fit for travel may recover the damages suffered by him or her from the governmental agency.[37]

Interpreting this statute, the Michigan Supreme Court

---

[32] MCL 691.1401 *et seq.*

[33] *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567, 595; 363 NW2d 641 (1984); see MCL 691.1407(1).

[34] See MCL 691.1401(c), (e), and (f); *In re Claim of Moross Against Hillsdale Co*, 242 Mich 277, 281; 218 NW 683 (1928); *Alpert v Ann Arbor*, 172 Mich App 223, 227; 431 NW2d 467 (1988).

[35] *Lash v Traverse City*, 479 Mich 180, 195 n 33; 735 NW2d 628 (2007); *Grimes v Dep't of Transportation*, 475 Mich 72, 78; 715 NW2d 275 (2006); *Maskery v Univ of Michigan Bd of Regents*, 468 Mich 609, 614; 664 NW2d 165 (2003).

[36] MCL 691.1402.

[37] MCL 691.1402(1).

has stated that a governmental agency's immunity is waived for bodily injury or property damage

> if the road has become, through lack of repair or maintenance, not reasonably safe for public travel. . . . MCL 691.1402(1) establishes the duty to maintain the highway in "reasonable repair." The phrase "so that it is reasonably safe and convenient for public travel" simply refers to the duty to maintain and repair, and states the desired outcome of reasonably repairing and maintaining the highway; it does not establish a second duty to keep the highway "reasonably safe." Hence, the Legislature has not waived immunity if the repair is reasonable but the road is nonetheless still not reasonably safe because of some other reason.
>
> Viewing the [governmental immunity act] as a whole, it can also be seen that the converse of this statement is true: that is, the Legislature has not waived immunity where the maintenance is allegedly unreasonable but the road is still reasonably safe for public travel. . . . [A]n *imperfection* in the roadway will only rise to the level of a compensable "defect" when that imperfection is one which renders the highway not "reasonably safe and convenient for public travel" . . . .[38]

Further, to be liable for injuries or damages caused by defective highways, the governmental agency must have known, "or in the exercise of reasonable diligence should have known, of the existence of the defect and had a reasonable time to repair the defect before the injury took place."[39]

In sum, the

> governmental agency does not have a separate duty to eliminate *all* conditions that make the road not reasonably

---

[38] *Wilson v Alpena Co Rd Comm*, 474 Mich 161, 167-168; 713 NW2d 717 (2006) (citations omitted); see also *Nawrocki v Macomb Co Rd Comm*, 463 Mich 143; 615 NW2d 702 (2000).

[39] MCL 691.1403.

safe; rather, an injury will only be compensable when the injury is caused by an unsafe condition, of which the agency had actual or constructive knowledge, which condition stems from a failure to keep the highway in reasonable repair.

\* \* \*

"The purpose of the highway exception is not to place upon the state . . . an unrealistic duty to ensure that travel upon the highways will always be safe. Looking to the language of the statute, we discern that the true intent of the Legislature is to impose a duty to keep the physical portion of the traveled roadbed *in reasonable repair*."[40]

Notably, this Court and the Supreme Court have clarified that "the only permissible claims are those arising from a defect in the actual roadbed itself"[41] and that liability under the exception does not extend to claims based simply on defective design[42] or accumulations of ice and snow.[43]

With respect to design defects, the Supreme Court in *Hanson v Mecosta Co Rd Comm'rs* held that "the highway exception does not include a duty to design, or to correct defects arising from the original design or

---

[40] *Wilson*, 474 Mich at 168-170, quoting *Scheurman v Dep't of Transportation*, 434 Mich 619, 631; 456 NW2d 66 (1990) (emphasis added by *Wilson*).

[41] *Hanson v Mecosta Co Rd Comm'rs*, 465 Mich 492, 503; 638 NW2d 396 (2002), citing *Nawrocki*, 463 Mich at 161-162.

[42] *Hanson*, 465 Mich at 502.

[43] *Buckner Estate v City of Lansing*, 480 Mich 1243, 1244 (2008) (holding that the plaintiffs had not shown that the defendant violated its duty to maintain the sidewalk in reasonable repair "[b]ecause the accumulation, by itself, of ice and snow on a sidewalk, regardless of whether it accumulated through natural causes or otherwise, does not constitute a 'defect' in the sidewalk"); *Haliw v Sterling Hts*, 464 Mich 297, 308-309; 627 NW2d 581 (2001); *Stord v Dep't of Transportation*, 186 Mich App 693, 694; 465 NW2d 54 (1991).

construction of highways."[44] The Court explained, "Nowhere in the statutory language is there a duty to *install*, to *construct* or to correct what may be perceived as a dangerous or defective *"design."*[45]

> "[T]he focus of the highway exception is on *maintaining* what has already been built in a state of reasonable repair so as to be reasonably safe and fit for public vehicular travel." The plain language of the highway exception to governmental immunity provides that the road commission has a duty to repair and maintain, *not a duty to design or redesign.*[46]

Several cases have also addressed the accumulation of ice and snow on highways. In *Stord v Dep't of Transportation*,[47] this Court noted, "It has long been the law in this state . . . that a governmental agency's failure to remove the natural accumulation of ice and snow on a public highway does not signal negligence of that public authority." In *Haliw v Sterling Hts*,[48] the Supreme Court clarified that "a governmental agency's failure to remove ice or snow from a highway does not, by itself, constitute negligence. . . . [A] plaintiff must prove that there was an existing defect in the [highway] rendering it not reasonably safe for public travel." In other words, "there must exist the combination of the ice or snow and the defect that, in tandem, proximately causes the [accident]."[49] "In the absence of a persistent defect in the highway . . . rendering it unsafe for public

---

[44] *Hanson*, 465 Mich at 502.

[45] *Id.* at 501 (emphasis in original).

[46] *Id.* at 503 (emphasis added; citation omitted).

[47] *Stord*, 186 Mich App at 694.

[48] *Haliw*, 464 Mich at 308; see also *Johnson v City of Pontiac*, 276 Mich 103, 105; 267 NW 795 (1936) (stating that a plaintiff cannot recover if an injury "was due *solely* to the presence of ice and snow") (emphasis added).

[49] *Haliw*, 464 Mich at 311.

travel at all times, and which combines with the natural accumulation of ice or snow to proximately cause injury, a plaintiff cannot prevail against an otherwise immune municipality."[50]

In *Haliw*, the Court, applying these principles, held that the plaintiff could not "demonstrate that it was the *combination* of ice *and* a defect in the sidewalk that caused her to slip and fall."[51] According to the Court, the plaintiff admitted "that she slipped on the ice that was present on the sidewalk; she did not trip over, or lose her balance in any way because of the claimed depression in the sidewalk."[52] Therefore, the *"sole proximate cause* of [the] plaintiff's slip and fall was the ice; there was no persistent defect in the sidewalk rendering it unsafe for public travel at all times that, in combination with the ice, caused the incident."[53] To illustrate this point, the *Haliw* Court provided this example:

> Under the first scenario, a six-foot deep hole exists in the middle of a sidewalk. Water naturally accumulates in the top of the hole and, because of the weather conditions, freezes so that, in effect, the hole no longer exists. While walking upon the sidewalk, an individual steps on the ice, slips, and falls, thereby incurring injury. Under this scenario, it can only be said that the sole proximate cause of the slip and fall was the presence of the natural accumulation of ice. A different outcome, however, would present under a scenario where the same six-foot hole in the sidewalk is present, but the ice forms several inches below the top of the hole. While walking upon the sidewalk, an individual steps on the edge of the hole, which causes him to momentarily lose his balance. While attempting to

---

[50] *Id.* at 312.

[51] *Id.* at 310 (emphasis in original).

[52] *Id.*

[53] *Id.* (emphasis in original).

remain upright, this individual slips on the ice that had naturally accumulated in the hole. Under this scenario, it must be said that, in tandem, the defect and the natural accumulation of ice combined to proximately cause the slip and fall.[54]

### C. ANALYSIS

Plunkett argues on appeal that his complaint specifically alleged lack of repair or maintenance, not defective design, for which he acknowledges that damages cannot be recovered under the highway exception. However, Plunkett's theory of liability below was in part based on the "cross-slope/crown and/or super-elevation" of the roadbed. And despite his contentions to the contrary, he continues on appeal to assert that the "cross-slope/crown and/or super-elevation" contributed to the accident.

Under the preceding caselaw, we conclude that Plunkett's claims regarding the "cross-slope/crown and/or super-elevation" of the roadbed are not claims of lack of repair or maintenance. Rather, this prong of Plunkett's theory was premised on a claimed design defect that allowed water to collect or, stated differently, did not adequately allow water to drain off the roadbed. But the water on the roadway was a design issue, controlled by design factors, including elevation, angle, and width and how much rainfall an hour the road is designed to handle. In *Stord*, the plaintiffs asserted that "the natural accumulation combined with the contour of the highway presented a question of fact regarding whether the accumulation was unnatural."[55] This Court, however, classified the plaintiffs' argument as one alleging defective design or

---

[54] *Id.* at 311 n 10.

[55] *Stord*, 186 Mich App at 695.

construction of the highway and ruled that the trial court properly granted summary disposition in favor of MDOT.[56] MDOT is immune from liability for claims related to the construction, design, or redesign of a highway, including making sure the highway has a specific geometry or cross-slope. Accordingly, the highway exception to governmental immunity is inapplicable to this alleged defect, and Plunkett's claim in this regard should have been dismissed.

In addition to the allegations regarding the "cross-slope/crown and/or super-elevation," however, Plunkett's theory of liability below had a second prong, in part based on "rutting" in the roadbed surface of US-127. More specifically, Plunkett claimed that the rutting defects in the physical structure of the roadbed surface, along *"with* the unnaturally pooled water and/or rainfall, proximately caused [Holly] Plunkett's accident."[57]

As stated earlier, under Michigan law "there must exist the combination of the ice or snow [or water] and the defect that, in tandem, proximately causes the [accident]."[58] In other words, "[i]n the absence of a persistent defect in the highway . . . rendering it unsafe for public travel at all times, and which combines with the natural accumulation of ice or snow [or water] to proximately cause injury, a plaintiff cannot prevail against an otherwise immune municipality."[59] A defect that simply causes the accumulation of ice or snow, or water as in this case, is not sufficient to sustain an

---

[56] *Id.*; see also *Ulrich v Dep't of Transportation,* unpublished opinion per curiam of the Court of Appeals, issued April 14, 2005 (Docket No. 252525).

[57] Emphasis added.

[58] *Haliw*, 464 Mich at 311.

[59] *Id.* at 312.

action under the highway exception. Under *Haliw*, to maintain an action under the highway exception, the sole proximate cause of the injury cannot be simply slipping on the ice, snow, or water. The plaintiff must show that the injury was caused by the ice, snow, or water, *in tandem with the defect itself,* for example, tripping or losing one's balance on the edge of the defect and then slipping.[60]

Although *Haliw* is factually distinguishable because that case involved ice on a sidewalk, we agree with MDOT that the same fundamental principles underlying interpretation of the highway exception apply. Thus, applying *Haliw*, it is first significant to note that there is no dispute that it was raining and that the roadway was wet at the time of Holly Plunkett's accident. However, the presence of water on the roadway alone is not enough to maintain Plunkett's claim. Plunkett also needed to show that there was also an underlying "persistent defect" in the highway that rendered the road unsafe for public travel "at all times"[61] of which MDOT had notice and that combined with the water to proximately cause Holly Plunkett's injury. Plunkett alleged that the rutting on US-127 is such a defect.

However, Plunkett failed to plead or present evidence that the rutting was a "persistent defect" "at all times" of which MDOT had or should have had notice. For example, there were no facts pleaded or any evidence submitted to show that the rutting was so deep or wide that, regardless of the weather conditions, the road was unsafe for public travel. Expert testimony established that the rutting was not a significant enough condition

---

[60] *Id.* at 311 n 10.

[61] *Id.* at 312; see also *MacLachlan v Capital Area Transportation Auth,* 474 Mich 1059 (2006).

to put MDOT on notice that the road required repair. MDOT's expert, Gilbert Baladi, Ph.D., P.E., testified that some cracking and rutting is endemic to asphalt pavement and that the rutting at issue was within the guidelines and standards of the American Association of State Highway Transportation Officials. According to Dr. Baladi, the maintenance threshold for rutting on highways is somewhere between 0.5 to 0.7 inches, but the rutting at the accident site was less than 0.5 inch. Dr. Baladi opined that the roadway was in good condition. Moreover, MDOT's expert, engineering consultant James Valenta, testified that the accident rate in the area where Holly Plunkett's accident occurred was "significantly less than the national average." This evidence supports a conclusion that the rutting was not at all times a persistent defect of which MDOT should have had notice. (Notably, Plunkett points out that several similar accidents occurred at the same location in the three months *after* Holly Plunkett's death; however, these *subsequent* accidents could not have provided MDOT any notice of any potential hazard *before* Holly Plunkett's death and are, thus, irrelevant.)

As MDOT has pointed out, Plunkett submitted nothing to show that Holly Plunkett lost control of her vehicle for any reason other than hydroplaning. Plunkett's own expert witnesses conceded that the rutting would not have caused the vehicle to lose control if the road had been dry at the time of the accident. Indeed, Plunkett's expert, William Woehrle, testified that there was "no evidence to suggest" that the Plunkett vehicle was "tripped by any portion of the physical surface of the travel lane of the highway." Consistently with Plunkett's pleadings, Woehrle simply testified that "the physical surface of the highway provided the conditions for water to accumulate in these ruts . . . ." Moreover, Plunkett's experts also acknowledged that even if the

highway had been wet, the vehicle would not have hydroplaned if the water level had been lower.

Plunkett also argues that, contrary to *Haliw*, the alleged defect need not exist "at all times" because there is no such requirement in the statutory language of MCL 691.1402(1). However, we are bound to follow the Michigan Supreme Court's interpretation of the statute.[62]

Because Plunkett did not allege that there was a persistent defect in the roadway rendering it unsafe for public travel at all times that, in tandem with the pooling water, caused the accident, we conclude that the trial court erred by denying MDOT's motion for summary disposition.

Because our resolution of this issue is dispositive, we decline to address Plunkett's remaining argument regarding his entitlement to recovery of wrongful death damages.

Affirmed in part, reversed in part, and remanded for entry of an order granting MDOT summary disposition and dismissing Plunkett's claims with prejudice. We do not retain jurisdiction.

---

[62] *People v Beasley*, 239 Mich App 548, 556; 609 NW2d 581 (2000).