# STATE OF MICHIGAN

# COURT OF APPEALS

---

RYAN MENARD, by his conservator, SHELLY
MENARD,

        Plaintiff-Appellee,

v

TERRY R. IMIG and SHARRYL ANN
EVERSON,

        Defendants

and

MACOMB COUNTY DEPARTMENT OF
ROADS and COUNTY OF MACOMB,

        Defendants-Appellants.

UNPUBLISHED
September 6, 2018

No. 336220
Macomb Circuit Court
LC No. 2014-003145-NI

---

Before: O'BRIEN, P.J., and METER and RIORDAN, JJ.

PER CURIAM.

      In this negligence action, defendants Macomb County Department of Roads (MCDR) and Macomb County (the Macomb defendants, collectively) appeal as of right[1] the order of the trial

---

[1] Plaintiff, on appeal, challenges this Court's jurisdiction to hear this appeal as of right. Despite this largely meritless argument presented by plaintiff, we refuse to consider it, and instead, to any possible extent that we lack jurisdiction to hear this appeal as of right, we exercise our power to consider the appeal "as on leave granted 'in the interest of judicial economy.' " *Rains v Rains*, 301 Mich App 313, 320 n 2; 836 NW2d 709 (2013), quoting *Detroit v Michigan*, 262 Mich App 542, 545-546; 686 NW2d 514 (2004).

-1-

court denying their motion for summary disposition on governmental immunity grounds.[2] We now reverse and remand for entry of an order granting that motion.

## I. BACKGROUND FACTS & PROCEDURAL HISTORY

At around 10:00 p.m. on June 7, 2013, then 15-year-old Ryan Menard was riding his bicycle with friends. Ryan was at the rear of the group travelling northbound on Hipp Road in Bruce Township between 35 and 36 Mile Roads. Due to construction in the area, the traffic on that stretch of Hipp Road had increased greatly over the preceding few months. As a result, residents said that Hipp Road suffered greatly from the increased traffic and was in need of maintenance. Several people that lived or regularly drove on Hipp Road testified that the road was filled with potholes, parts of the road washed out after rain, and as a result it had a washboard effect. Further testimony indicated that the road had narrowed by the build-up of sediment and plaint life on the sides of the surface of the road that normally was meant to be used for vehicular travel. Employees of MCDR and the Director of Roads acknowledged that removing material that created the artificial narrowing was part of regular maintenance. They referred to the roadside build-up as "berms."

While riding his bike on Hipp Road, Ryan would steer as far as he could to the right side of the road when an automobile approached him from the rear. On the night at issue, several vehicles had passed Ryan without incident. Eventually, however, Terry Imig approached travelling northbound in a pick-up truck. At that same time, Sharryl Everson was travelling southbound in her automobile. Everson initially could not see Ryan or his friends, but thought she saw a flash of light, so engaged her high-beam headlights. Upon doing so, Everson saw Ryan's two friends, but not Ryan. While the high-beam headlights were on, Imig stated he was blinded. He did not see Ryan until Everson returned to her normal headlights. Imig testified that once he finally saw Ryan it was too late for him to swerve or stop before hitting him. Ryan was dragged for some distance underneath Imig's truck and remained trapped there while awaiting emergency assistance. Ryan suffered from broken vertebrae, which required at least four surgeries to his spine, and burns to his skin.

Initially, plaintiff filed suit against Imig alone, seeking third-party no-fault benefits. However, plaintiff eventually amended the complaint to assert claims against the Macomb defendants, asserting that their negligence fell within an exception to the government tort liability act (GTLA), MCL 691.1401 *et seq*. Plaintiff cited the deteriorated and narrow nature of Hipp Road at the site of the accident as the actionable defects under MCL 691.1402, commonly referred to as the highway exception. After discovery, the Macomb defendants moved the trial court for summary disposition, arguing that they were protected by governmental immunity. The Macomb defendants contended that plaintiff failed to provide adequate notice pursuant to MCL 691.1404(1), did not plead and prove an actionable highway defect pursuant to MCL

---

[2] The Macomb defendants also appealed the trial court's decision to grant plaintiff's motion for leave to file a third amended complaint. However, because summary disposition was warranted in favor of the Macomb defendants regardless of the amendment, we need not address that now moot issue.

691.1402(1), and presented no evidence that any such defect caused Ryan's injuries. The trial court ultimately disagreed and denied the motion for summary disposition. This appeal followed.

## II. GOVERNMENTAL IMMUNITY

The Macomb defendants argue that the trial court should have granted summary disposition in their favor due to plaintiff's failure to provide evidence of causation. We agree.

### A. STANDARD OF REVIEW

"This Court reviews motions for summary disposition under MCR 2.116(C)(7) de novo." *Trentadue v Buckler Automatic Lawn Sprinkler Co*, 479 Mich 378, 386; 738 NW2d 664 (2007). "In reviewing a ruling pursuant to subrule (C)(7), '[w]e consider all documentary evidence submitted by the parties, accepting as true the contents of the complaint unless affidavits or other appropriate documents specifically contradict them.' " *Seldon v Suburban Mobility Auth for Regional Transp*, 297 Mich App 427, 432-433; 824 NW2d 318 (2012), quoting *Fane v Detroit Library Comm*, 465 Mich 68, 74; 631 NW2d 678 (2001). "Under MCR 2.116(C)(7), summary disposition is proper when a claim is barred by immunity granted by law." *State Farm Fire & Cas Co v Corby Energy Servs, Inc*, 271 Mich App 480, 482; 722 NW2d 906 (2006). The applicability of governmental immunity and its statutory exceptions are also reviewed de novo. *Moraccini v Sterling Hts*, 296 Mich App 387, 391; 822 NW2d 799 (2012). Summary disposition is proper where no relevant factual dispute exists regarding whether a claim is barred pursuant to MCR 2.116(C)(7). *Id.* "Questions of statutory interpretation are also reviewed de novo." *Rowland v Washtenaw Co Road Comm*, 477 Mich 197, 202; 731 NW2d 41 (2007).[3]

### B. APPLICABLE LAW

The GTLA provides immunity for governmental agencies where "the governmental agency is engaged in the exercise or discharge of a governmental function," except where otherwise provided within the act. MCL 691.1407(1). "The term 'governmental function' is to be broadly construed, and the statutory exceptions are to be narrowly construed." *Maskery v Bd of Regents of Univ of Mich*, 468 Mich 609, 614; 664 NW2d 165 (2003). One such exception is the highway exception codified at MCL 691.1402(1). "It states in relevant part that '[a] person who sustains bodily injury or damage to his or her property by reason of failure of a governmental agency to keep a highway under its jurisdiction in reasonable repair and in a condition reasonably safe and fit for travel may recover the damages suffered by him or her from

---

[3] The Macomb defendants make a lengthy and complex argument regarding the standard of review to be employed in cases involving governmental immunity and motions for summary disposition on that ground. We are satisfied that the appropriate standard of review was used by the trial court, and has been reflected herein. See *Kozak v City of Lincoln Park*, 499 Mich 465, 468; 885 NW2d 443 (2016) (holding summary disposition was improper on the ground of governmental immunity where the "plaintiffs created a genuine issue of material fact giving rise to a reasonable inference that the highway was not in reasonable repair.").

the governmental agency.' " *Denney v Kent Co Rd Comm*, 317 Mich App 727, 732; 896 NW2d 808 (2016), quoting MCL 691.1402(1). The Michigan Supreme Court has been clear that in order to plead and prove a claim outside of the broad protection of governmental immunity with respect to an exception, a plaintiff must prove that they suffered "an injury caused by a defect . . . under traditional negligence principles." *Haliw v Sterling Hts*, 464 Mich 297, 309; 627 NW2d 581 (2001).[4] "To establish a prima facie case of negligence, a plaintiff must be able to prove four elements: (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) causation, and (4) damages." *Id*. at 309-310. "Proof of causation requires both cause in fact and legal, or proximate, cause." *Id*. at 310.

## C. ANALYSIS

Without having to consider whether plaintiff provided evidence of an actionable defect on Hipp Road, we conclude that plaintiff failed to provide proof of causation necessary to survive defendant's motion for summary disposition.

## 1. CAUSE IN FACT

The cause in fact prong of causation "generally requires showing that 'but for' the defendant's actions, the plaintiff's injury would not have occurred." *O'Neal v St John Hosp & Medical Ctr*, 487 Mich 485, 496; 791 NW2d 853 (2010) (internal citations and quotations omitted). "While a plaintiff need not prove that an act or omission was the *sole* catalyst for his injuries, he must introduce evidence permitting the jury to conclude that the act or omission was *a* cause." *Craig v Oakwood Hosp*, 471 Mich 67, 87; 684 NW2d 296 (2004). More specifically, plaintiff's "evidence is sufficient if it establishes a logical sequence of cause and effect." *Skinner v Square D Co*, 445 Mich 153, 159-160; 516 NW2d 475 (1994). "There must be more than a mere possibility that unreasonable conduct of the defendant caused the injury. We cannot permit the jury to guess, although legitimate inferences may be drawn from established facts." *Daigneau v Young*, 349 Mich 632, 636; 85 NW2d 88 (1957). "An explanation that is consistent with known facts but not deducible from them is impermissible conjecture." *Wiley v Henry Ford Cottage Hosp*, 257 Mich App 488, 496; 668 NW2d 402 (2003). "And while the evidence need not negate all other possible causes, this Court has consistently required that the evidence exclude other reasonable hypotheses with a fair amount of certainty." *Craig*, 471 Mich at 87-88 (internal citations and quotations omitted).

Plaintiff first contends that the deteriorated state of the roadway was a proximate cause of Ryan's injuries. Plaintiff's initial explanation as to how the potholes caused the accident was that they affected Imig's stopping time. In support of that, plaintiff provided abundant testimony

---

[4] This holding by the Michigan Supreme Court belies any assertion by the Macomb defendants that the highway exception should be provided the same limited definition of "the proximate cause" provided for individual governmental actors in MCL 691.1407(2)(c). See *Ray v Swager*, 501 Mich 52; 903 NW2d 366 (2017). Traditional negligence principles only require proof that a defect was a proximate cause, not the proximate cause. *Craig v Oakwood Hosp*, 471 Mich 67, 87; 684 NW2d 296 (2004).

that Hipp Road in the area in question did have potholes and a washboard effect. Plaintiff even presented expert testimony that such road deterioration can cause stop time to be increased. However, just because such conditions exist, does not establish by their mere existence that they proximately caused plaintiff's injuries. During Imig's second deposition he was asked, "Was there anything about the condition of the road that you believe prevented your truck from coming to a stop right away?" He responded, "No." Imig was later asked, "Do you recall your vehicle bouncing at any point before it came to a stop, because your tires hit a pothole, rust, washout, anything in the roadway?' Imig answered, "Not that I remember." Clearly, from those answers, Imig has established that the condition of the road did not hinder his ability to stop. Thus, plaintiff's theory that Imig's stop time was increased "is consistent with known facts but not deducible from them," and thus it "is impermissible conjecture." *Wiley*, 257 Mich App at 496.

In an attempt to avoid Imig's second deposition testimony, plaintiff cites to allegedly differing testimony during Imig's first deposition and in his answer to an interrogatory. However, when reading all of Imig's testimony in its full context, it is clear that he only is stating that the fact that it was a dirt road, versus a paved road, made the difference in stopping time. In Imig's answer to an interrogatory he stated, "It is possible that I may have been able to stop faster on a paved roadway." The fact that the road was dirt instead of paved is not a defect. He could not tell if any defects in the road contributed to his inability to stop before hitting Ryan.

The evidence shows, at most, that whenever Imig specifically was asked if the potholes or washboard effect caused by the deterioration of Hipp Road increased his stop time, he either said he did not know or that they did not. When he was asked the more general question of whether a "condition of the road" increased his stop time, he gave more positive answers. But when he was asked to clarify, he could not determine whether it was deterioration or the mere fact that the road was a dirt road and not paved. There simply was no testimony on the record that Imig's stop time was slowed by a defect in the roadway, only that it "might have" been, even though he does not remember hitting a specific pothole or his truck bouncing before stopping. Plaintiff providing only the "mere possibility" or speculation that the potholes increased his stop time and caused Ryan's injuries was not sufficient to survive a motion for summary disposition. *Teal v Prasad*, 283 Mich App 384, 392; 772 NW2d 57 (2009).

Plaintiff next contends that the potholes and washboard effect were a cause-in-fact of Ryan's injuries because Ryan could have avoided the accident if he was not dodging potholes. Indeed, Ryan did say that he was dodging potholes at the time of the accident, and that the condition of the road was "terrible." However, as just discussed, just because the defect existed and Ryan encountered it does not mean that it actually was a cause-in-fact of the injuries. Ryan also testified that when Imig's truck was approaching, Ryan was all the way over to the right side of the road, and that when other vehicles previously had come past him he had done the same thing. Ryan did not testify that he was all the way to the right side of the road because he was dodging potholes, he testified he moved in that direction to avoid automobiles that passed him on the road. Ryan clarified later in his deposition that although he was dodging potholes on the right side of the road, he did not change his course on the road as Imig approached.

Imig agreed, stating that he did not see Ryan suddenly change directions before the collision occurred. In other words, there was no testimony on the record that Ryan was positioned in front of Imig's vehicle at the time of the accident because of potholes. Based on

Ryan's and Imig's testimony, the potholes had no bearing on plaintiff's bicycling actions before he was struck. "It is important to bear in mind that a plaintiff cannot satisfy [the causation] burden by showing only that the defendant *may* have caused his injuries. Our case law requires more than a mere possibility or a plausible explanation." *Id*. (quotation marks omitted).[5] In sum, while there was abundant evidence on the record that Hipp Road in the location in question had a great deal of potholes and washboard effect due to alleged improper maintenance, there was no evidence that the defect caused Ryan's injuries, so summary disposition was required. See *Craig*, 471 Mich at 87.[6]

Plaintiff next argues that the narrow nature of Hipp Road was a proximate cause of Ryan's injuries. Plaintiff has two different theories regarding how the width of the road was a proximate cause. First, plaintiff contends that had the road been wide enough, Imig's truck, Everson's car, and Ryan's bicycle all could have fit safely on the road together. In support of that argument plaintiff cites to expert witness testimony concluding that the road width was a cause. However, testimony from Imig and Ryan reveal that the width of the road was not a

---

[5] Arguing to the contrary, plaintiff directs this Court to an answer to an interrogatory provided by plaintiff. Therein, plaintiff stated that Ryan was attempting to get to a grassy area on the side of the road to avoid the accident, but was blocked from doing so because he was avoiding potholes. However, that answer was not provided by Ryan, the document was not signed by him, it was only signed by his mother, Shelly Menard, and even if he did make the statement he was not under oath when doing so. Indeed, during his deposition, Ryan stated that he did not remember providing any answers to interrogatories and acknowledged that he never signed such a document.

This Court has been clear that an unsworn, unsigned statement by a witness cannot create a question of fact for trial. See *Gorman v American Honda Motor Co, Inc*, 302 Mich App 113, 120; 839 NW2d 223 (2013) (holding that "an unsworn, unsigned affidavit may not be considered by the trial court on a motion for summary disposition."); see also *Sherry v East Suburban Football League*, 292 Mich App 23, 31-32; 807 NW2d 859 (2011) (holding that a written statement with a signature but without notarization is still not enough to make a statement substantively admissible); see also *Liparoto Constr, Inc v Gen Shale Brick, Inc*, 284 Mich App 25, 33; 772 NW2d 801 (2009) (holding that this Court will not permit a party to create a question of fact regarding an issue based on an unsworn statement by a witness). As noted, Ryan's sworn testimony was that he was riding on the right side of the road expecting to be passed on his left by Imig, which had happened each other time an automobile had approached him while he was biking. Thus, by his own sworn testimony, Ryan had no reason to be searching for a way to get off of the road, because he expected to be passed. Consequently, Ryan's actions in dodging potholes was not a cause-in-fact of the accident.

[6] To the extent plaintiff asserts that the material used to make and grade Hipp Road also was a proximate cause of Ryan's injuries, that argument relied on the potholes allegedly resulting from use of that material being a proximate cause of Ryan's injuries. Because the potholes were not a proximate cause, this argument also fails.

cause-in-fact of Ryan's injuries in the manner alleged. Both Ryan and Imig testified that they travelled as far to the right of the road as they could immediately preceding the accident.

Ryan stated he did so when a vehicle was approaching from behind him, while Imig stated he did so while vehicles approached him coming from the opposite direction. Thus, rather the road was 15-feet wide or 20-feet wide, at the time in question Ryan and Imig both would have been to the far right of the road. Imig provided further testimony that he could not see Ryan until Everson turned off her high-beam headlights. Imig explicitly stated that by the time he saw Ryan he did not have time to veer in either direction, even if there was room to do so. Consequently, even if the road was maintained at the 20-feet it allegedly was supposed to be, leaving room for all three to be on the road at once, the accident still would have happened. Imig would have moved over to the right to avoid Everson, Ryan would have moved over to the right to avoid Imig, Everson's lights would have blinded Imig, and when she turned them off and Imig finally saw Ryan, it would have been too late to veer in either direction. Therefore, plaintiff has failed to show "that 'but for' the defendant's actions, the plaintiff's injury would not have occurred." *O'Neal*, 487 Mich at 496. All of the testimony from Imig and Ryan reveals that the accident would have occurred even if Imig's truck, Everson's car, and Ryan's bicycle could have safely fit on the road. *Id*.

Plaintiff also asserts that the narrow nature of the road was a proximate cause of Ryan's injuries because it required Everson and Imig to drive closer together, which decreased the angle at which Everson's high-beam headlights hit Imig's eyes, which increased the glare and Imig's blindness, which made Imig unable to see Ryan until it was too late to stop or swerve. As has become clear while discussing the other alleged theories of causation, the direct cause is that Imig could not see Ryan in time to stop or veer before hitting him. To wit, Imig testified that if Everson had not been approaching with her high-beams on, he would have been able to see Ryan riding his bike and have time to stop before hitting him. In support of that argument, plaintiff provided expert witness testimony that given the narrow nature of the road, Everson's high-beam headlights induced increased glare and blindness in Imig. Thus, it stands to reason that had the road been maintained at its normal width, the glare and blindness would have been reduced, and Imig would have seen Ryan in time to stop and avoid hitting him. Therefore, unlike plaintiff's other theories, the evidence supporting the increased glare and blindness theory "is sufficient [because] it establishes a logical sequence of cause and effect." *Skinner*, 445 Mich at 159-160. Plaintiff has created a question of fact regarding whether the width of the road was a cause-in-fact of Ryan's injuries, because it stands to reason that " 'but for' the defendant's actions, the plaintiff's injury would not have occurred." *O'Neal*, 487 Mich at 496. However, this Court's analysis on the issue of proximate causation does not end when something could be considered a cause-in-fact.

## 2. LEGAL CAUSATION

"Proof of causation requires both cause in fact and legal, or proximate, cause." *Haliw*, 464 Mich at 310. The Michigan Supreme Court, in *Ray v Swager*, 501 Mich 52, 63-64; 903 NW2d 366 (2017) (citations omitted), recently summarized proximate causation and the difference between cause-in-fact and legal causation:

Proximate cause, also known as legal causation, is a legal term of art with a long pedigree in our caselaw. Proximate cause is an essential element of a negligence claim. It "involves examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences." Proximate cause is distinct from cause in fact, also known as factual causation, which "requires showing that 'but for' the defendant's actions, the plaintiff's injury would not have occurred." Courts must not conflate these two concepts. We recognize that our own decisions have not always been perfectly clear on this topic given that we have used "proximate cause" both as a broader term referring to factual causation and legal causation together and as a narrower term referring only to legal causation. All this broader characterization recognizes, however, is that "a court must find that the defendant's negligence was a cause in fact of the plaintiff's injuries before it can hold that the defendant's negligence was the proximate or legal cause of those injuries." In a negligence action, a plaintiff must establish both factual causation, i.e., "the defendant's conduct in fact caused harm to the plaintiff," and legal causation, i.e., the harm caused to the plaintiff "was the general kind of harm the defendant negligently risked." If factual causation cannot be established, then proximate cause, that is, legal causation, is no longer a relevant issue.

In other words, proximate cause "involves a determination that the connection between the wrongful conduct and the injury is of such a nature that it is socially and economically desirable to hold the wrongdoer liable, and depends in part on foreseeability." *Wiley*, 257 Mich App at 496-497. More simply, "[p]roximate cause draws the line of liability at the probable and natural results of a defendant's negligent act." *Adas v Ames Color-File*, 160 Mich App 297, 303; 407 NW2d 640 (1987). Proximate cause is "a foreseeable, natural, and probable cause." *Shinholster v Annapolis Hosp*, 471 Mich 540, 546; 685 NW2d 275 (2004).

From the record, clearly Ryan's injuries were not "a foreseeable, natural, and probable" result of the Macomb defendants' failure to properly maintain the width of Hipp Road. See *id*. It was not foreseeable that the Macomb defendants' failure to remove berms from the side of the road would result in a bicyclist being struck from behind by a driver of a truck blinded by oncoming headlights. Not only was the situation not a foreseeable outcome of the Macomb defendants' negligence, but given the broad immunity provided by the GTLA, it would be not be "socially and economically desirable to hold the" Macomb defendants liable under the circumstances shown in the record. *Wiley*, 257 Mich App at 496-497.

This conclusion is supported by *Singerman v Muni Serv Bureau, Inc*, 455 Mich 135, 136-137; 565 NW2d 383 (1997). There, "[w]hile on the ice hockey rink at the Westland Sports Arena, plaintiff Gary Singerman was hit in the eye by a hockey puck and sustained severe damage." At the time, Singerman was not wearing a helmet and the premises owner had a rule requiring anyone on the ice to wear helmets. *Id*. at 137-138. As a theory of liability, Singerman alleged that if the premises owner had enforced the rule precluding play without a helmet, he would not have been on the ice, and thus would not have been struck by the puck. *Id*. at 144. The Court acknowledged that, technically, the failure to enforce the no-helmet rule was a cause-in-fact of Singerman's injuries, but still determined that summary disposition was warranted. *Id*. at 144-145. The Court provided the following reasoning:

An event may be one without which a particular injury would not have occurred, but if it merely provided the condition or occasion affording opportunity for the other event to produce the injury, it is not the proximate cause thereof. Negligence which merely makes possible the infliction of injuries by another, but does not put in motion the agency by which the injuries are inflicted, is not the proximate cause thereof. Causes of injury which are mere incidents of the operating cause, while in a sense factors, are so insignificant that the law cannot fasten responsibility upon one who may have set them in motion. [*Id*. at 145, quoting 57A Am Jur 2d, Negligence, § 473, pp 454-455.]

Consequently, the Court affirmed the trial court's grant of summary disposition. *Singerman*, 455 Mich at 145.

The same reasoning can be applied here. The narrow nature of the road "merely provided the condition or occasion affording opportunity for the other event to produce the injury . . . ." *Id*. (quotation marks omitted). In other words, viewing the facts in the light most favorable to plaintiff, plaintiff has proved only that the limited width of Hipp Road created the condition that would allow Everson's high-beam headlights to so blind Imig, who did not press his brakes despite that blindness. See *id*. As such, the narrow nature of Hipp Road "merely ma[de] possible the infliction of injuries by another, but d[id] not put in motion the agency by which the injuries [were] inflicted . . . ." *Id*. (quotation marks omitted). The width of the road would not have been an issue if Everson had decided not to use her high-beam headlights or Imig decided to stop his truck when he could not see. Consequently, Hipp Road only was a conduit for the allegedly negligent actions of others. It did not put the agency in motion. *Id*. Therefore, according to the reasoning in *Singerman*, the Macomb defendants' alleged failure to maintain the width of Hipp Road was not the legal cause of Ryan's injuries. See *id*. The injuries suffered by Ryan were so far attenuated from the alleged negligence of the Macomb defendants that it would not be "socially and economically desirable to hold" them liable. *Wiley*, 257 Mich App at 496-497.

## III. CONCLUSION

Because all of the alleged defects in the road were not a proximate cause of Ryan's injuries, summary disposition should have been granted in favor of the Macomb defendants. Considering that plaintiff's claims against the Macomb defendants must be dismissed, the remaining issues in this case have been rendered moot and we need not consider them.[7]

---

[7] We note, however, that despite the Macomb defendants' argument that plaintiff's statutory notice was insufficient for failing to specifically identify the location and nature of the defect and leaving off witnesses who did not see the accident, the notice provided by plaintiff satisfied the requirements of MCL 691.1404(3) because it was "understandable and sufficient to bring the important facts to the governmental entity's attention." *Plunkett v Dep't of Transp*, 286 Mich App 168, 176; 779 NW2d 263 (2009). See also *Milot v Dep't of Transportation*, 318 Mich App

Reversed and remanded to enter an order granting summary disposition in favor of the Macomb defendants. We do not retain jurisdiction.

/s/ Colleen A. O'Brien
/s/ Michael J. Riordan

---

272, 277; 897 NW2d 248 (2016) (defining witness as it is used in MCL 691.1404(3) as a person "who witnessed the 'occurrence of the injury and defect.' ").