# Order

Michigan Supreme Court
Lansing, Michigan

March 11, 2011

140193

JEROME PLUNKETT, as Personal
Representative of the ESTATE OF
HOLLY MARIE PLUNKETT,
            Plaintiff-Appellant,

v

DEPARTMENT OF TRANSPORTATION,
            Defendant-Appellee.
_____/

Robert P. Young, Jr.,
*Chief Justice*

Michael F. Cavanagh
Marilyn Kelly
Stephen J. Markman
Diane M. Hathaway
Mary Beth Kelly
Brian K. Zahra,
*Justices*

SC: 140193
COA: 284320
Ingham CC: 05-000166-MD

On January 20, 2011, the Court heard oral argument on the application for leave to appeal the November 3, 2009 judgment of the Court of Appeals. On order of the Court, the application is again considered, and it is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court.

MARKMAN, J. (*concurring*).

I concur in the denial of leave to appeal because I believe that the Court of Appeals reached the correct result. Plaintiff alleges that defendant failed to correct rutting on the highway and that rain water accumulated in the ruts, which caused plaintiff's decedent to hydroplane and to lose control of her vehicle. The highway exception to governmental immunity, MCL 691.1402(1), provides, in pertinent part, "each governmental agency having jurisdiction over a highway shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel." In *Haliw v City of Sterling Heights,* 464 Mich 297, 312 (2001), relying on the 'natural accumulation' doctrine, this Court held that the city was not liable for injuries that plaintiff suffered when she slipped and fell on ice that had formed in a depression on a sidewalk. *Haliw* explained that "'[i]t has long been the law in this state . . . that a governmental agency's failure to remove the natural accumulations of ice and snow on a public highway does not signal negligence of that public authority.'" *Id.* at 305, quoting *Stord v Transportation Dep't,* 186 Mich App 693, 694 (1991). *Haliw* relied heavily upon *Hopson v Detroit,* 235 Mich 248 (1926), which similarly held that a municipality was not liable for injuries that plaintiff suffered when she slipped and fell on ice that had formed in a depression on a sidewalk. *Hopson,* 235 Mich at 252, explained:

> "We think the proper and only reasonable interpretation of the statute is, that wherever ice or snow is the sole proximate cause of the accident, there shall be no liability, but where at the time of the accident there is any other defect to which, as a proximate cause, the accident is in part attributable, there may be a liability notwithstanding the fact that it also may be attributable in part to ice or snow. *This other defect, however, is not a proximate cause within the meaning of this rule, simply because it causes the accumulation of the ice or snow.*" [Quoting *Newton v Worcester*, 174 Mass 181 (1899); emphasis added.]

*Haliw,* 464 Mich at 307, specifically quoted this language with approval.

In the instant case, although there is testimony that ruts in the roadbed can be dangerous even where the road is dry, i.e., "at any time," there is no evidence that the ruts caused the accident at issue here other than by causing the rain water to collect in the ruts. And, as this Court held in both *Hopson,* 235 Mich at 252, and *Haliw,* 464 Mich at 307, the defect "is not a proximate cause . . . simply because it causes the accumulation of the ice or snow." Because the roadbed ruts only caused the accumulation of the water, they were not a proximate cause of the accident.

The dissent argues that this case is distinguishable from *Haliw* because *Haliw* involved a *natural* accumulation of ice on a *sidewalk*, while the instant case involves an *unnatural* accumulation of water on a *highway*. First, given that MCL 691.1401(e) defines "highway" as including "sidewalks," the fact that *Haliw* involved a sidewalk and the instant case involves a highway is irrelevant—they are both "highways" for purposes of the governmental tort liability act. Second, given that *Haliw* held that the accumulation of ice in a depression constitutes a "natural accumulation," the accumulation of water in the ruts at issue here must also be considered a "natural accumulation" for purposes of the natural accumulation doctrine.

Accordingly, for the same reason that the defendant in *Haliw* was not liable for the accumulation of ice in the depression on the sidewalk, defendant here is not liable for the accumulation of water in the ruts on the highway—neither the depression nor the ruts caused anything other than the accumulation of ice or water. That is, just as the ice that formed in the depression in *Haliw* is what caused the plaintiff to fall, not the depression itself, here, the water that formed in the ruts is what caused plaintiff's decedent to hydroplane and lose control of her vehicle, not the ruts themselves, and, thus, defendant cannot be held liable.

YOUNG, C.J., joins the statement of MARKMAN, J.

MARILYN KELLY, J. (*dissenting*).

I dissent from the Court's order denying plaintiff's application for leave to appeal. By voting to deny leave to appeal, three justices of this Court allow to stand a clearly erroneous published decision of the Court of Appeals. For the reasons set forth below, I would reverse the Court of Appeals and reinstate the trial court's order denying defendant's motion for summary disposition.

## FACTUAL BACKGROUND

In 2005, Holly Plunkett was traveling southbound on US-127 in Clare County. She lost control of her vehicle and struck a tree, sustaining fatal injuries in the accident. According to the police report, "it was raining hard at the time, [and] there was some standing water in the roadway where the vehicle tires traveled." The report further suggested that Mrs. Plunkett lost control of her vehicle as a result of hydroplaning.

Plaintiff Jerome Plunkett, the personal representative of Mrs. Plunkett's estate, filed suit against the Michigan Department of Transportation (MDOT). Plaintiff's third amended complaint alleged that Mrs. Plunkett's accident was the result of "sudden[] and unexpected[] los[s of] control of her vehicle due to the dangerous and defective conditions which existed on/at the actual physical structure of the roadbed surface of the highway at issue . . . ." Plaintiff's complaint further alleged that

> [a]s the direct and proximate result of Defendant's failure to maintain the highway at issue in reasonable repair and in a condition reasonably safe and fit for public/vehicular travel, defects in the actual physical [sic] of the roadbed surface of said highway, designed for vehicular travel, allowed an unnatural accumulation of rainfall to pool/collect.[1]

As a result of this alleged failure to maintain the highway in reasonable repair and in a condition reasonably safe for vehicular travel, plaintiff averred that Mrs. Plunkett's van hydroplaned on the road. She then lost control of it.

Plaintiff further alleged, and it is undisputed, that the stretch of US-127 in question was reconstructed in 1990, at which time it was reasonably safe and fit for vehicular travel. However, plaintiff claimed that

> [o]ver a period of time, the portion of the highway at issue fell into disrepair which caused the actual physical structure of the roadbed's

---

[1] Plaintiff's third amended complaint, ¶ 20.

surface to thereafter contain substantially dangerous and defective conditions in violation of MCL 691.1402.[2]

The parties do not dispute that, as originally designed and reconstructed in 1990, US-127 included both (1) super-elevation and (2) cross-slope/crown features. Respectively, these design features provide (1) a gentle banking of the road to compensate for centrifugal force acting on vehicles negotiating a curve in the road and (2) a gentle sloping of the pavement downward from the center to cause water to run off to either side of the road and prevent water accumulation.

Plaintiff's complaint alleged that MDOT engaged in a repair technique known as "microsurfacing." This was an effort to correct the effects of wear which altered the super-elevation and cross-slope/crown characteristics of the road from its 1990 construction. As a result of the microsurfacing, it asserted, water no longer ran off the surface of the road. Additionally, the physical structure of the road allegedly became hazardous and defective because it was not properly maintained and in reasonable repair. It was no longer in a condition reasonably safe and fit for vehicular travel. Plaintiff asserted that there was (1) excessive wheel track rutting, (2) excessive wear, (3) an uneven gradient that resulted from excessive wear, and (4) an inadequate cross-slope/crown and inadequate super-elevation.[3] Plaintiff further alleged that the defective condition had existed for at least 30 days before the accident and that MDOT knew or should have known about it for at least 30 days.

It is undisputed that MDOT had scheduled the portion of US-127 in question to be resurfaced to correct defects that resulted from excessive wear. Plaintiff established through the testimony of MDOT employee Terence Palmer and former MDOT engineer Larry Galehouse that an accumulation of water on the highway would pose a safety concern.

Plaintiff theorized that during the 15 years since the 1990 reconstruction of US-127 and Mrs. Plunkett's accident, MDOT's maintenance and repair activities effectively eliminated the road's original super-elevation and cross-slope/crown. Furthermore, due to traffic wear, the road had become rutted. As a result, water became trapped in the ruts because it could no longer run off, owing to the lack of super-elevation and cross-slope/crown. Hence, plaintiff alleged that MDOT created a defect independent of the rainfall that caused water to pool on the road. This, in turn, caused Mrs. Plunkett's vehicle to hydroplane and crash.

---

[2] *Id*. at ¶ 24.

[3] *Id*. at ¶¶ 27-30.

Defendant moved for summary disposition pursuant to MCR 2.116(C)(7) on the basis of governmental immunity.[4] The trial court denied defendant's motion. It reasoned that MDOT had not satisfied its statutory duty to keep the highway "in reasonable repair and in a condition reasonably safe and fit for travel" by "simply having a road and letting it degrade in such a way that it only represents a direct serious traffic hazard on rainy days." The trial court further ruled that no statute or case says "you only have to maintain and repair your roads sufficiently so that they work pretty well on sunny days or dry days, but they are unbelievably dangerous on wet days."

The Court of Appeals reversed the trial court's decision, concluding that it erred in denying summary disposition on the basis of governmental immunity.[5] The court reasoned that the only claim a plaintiff may sustain is one arising out of a defect in the actual roadbed itself. It found that liability under the "highway" exception to governmental immunity does not extend to claims based on design defects or natural accumulations of ice and snow. The court opined that plaintiff's claims based on the defective super-elevation and cross-slope/crown were not claims for lack of repair or maintenance, but were instead premised on design defects. Accordingly, the court held that MDOT was entitled to summary disposition.

We granted oral argument on plaintiff's application for leave to appeal.[6]

LEGAL BACKGROUND

We review de novo a trial court's ruling on a motion for summary disposition.[7] When considering whether a motion for summary disposition brought pursuant to MCR 2.116(C)(7) was properly decided, we consider all documentary evidence. We accept the contents of a complaint as factually accurate unless contradicted by documentation

---

[4] Defendant actually filed motions for summary disposition on three separate occasions. Defendant abandoned its first motion after plaintiff amended his complaint. The trial court heard argument on the second motion, but continued the hearing until plaintiff's liability experts could be deposed. Defendant thereafter filed its third motion.

[5] *Plunkett v Dep't of Transportation*, 286 Mich App 168 (2009).

[6] 486 Mich 936 (2010).

[7] *Shay v Aldrich*, 487 Mich 648, 656 (2010).

submitted by the moving party.[8]  This case involves a question of statutory interpretation which we also review de novo.[9]

The governmental tort liability act, MCL 691.1401 *et seq.*, provides immunity for governmental agencies including MDOT.  Under MCL 691.1407, governmental agencies are generally immune from tort liability while engaged in the exercise or discharge of a governmental function unless an exception applies.[10]  Germane to this appeal is the "highway" exception to governmental immunity, MCL 691.1402, which provides in pertinent part:

> (1)  . . . [E]ach governmental agency having jurisdiction over a highway *shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel.*  A person who sustains bodily injury or damage to his or her property by reason or failure of a governmental agency to keep a highway under its jurisdiction in reasonable repair and in a condition reasonably safe and fit for travel may recover the damages suffered by him or her from the governmental agency.  [Emphasis added.]

Furthermore, MCL 691.1403 provides:

> No governmental agency is liable for injuries or damages caused by defective highways unless the governmental agency knew, or in the exercise of reasonable diligence should have known, of the existence of the defect and had a reasonable time to repair the defect before the injury took place.  Knowledge of the defect and time to repair the same shall be conclusively presumed when the defect existed so as to be readily apparent to an ordinarily observant person for a period of 30 days or longer before the injury took place.

In its opinion reversing the trial court and granting defendant's motion for summary disposition, the Court of Appeals relied heavily on *Haliw v City of Sterling*

---

[8] *Patterson v Kleiman*, 447 Mich 429, 434 n 6 (1994).

[9] *Regents of the Univ of Michigan v Titan Ins Co*, 487 Mich 289, 297 (2010).

[10] The statutory exceptions to governmental immunity include: (1) the "highway" exception, MCL 691.1402, (2) the "motor vehicle" exception, MCL 691.1405, (3) the "public building" exception, MCL 691.1406, (4) the "proprietary building" exception, MCL 691.1413, and (5) the "governmental hospital" exception, MCL 691.1407(4).

*Heights.*[11]  In that case, the plaintiff brought an action for damages related to injuries suffered when she slipped and fell on an ice-filled depression in a sidewalk.  The trial court denied her motion for summary disposition.  The Court of Appeals affirmed, finding that the plaintiff presented evidence creating an issue of fact regarding whether the sidewalk was reasonably safe for public travel under MCL 691.1402(1).[12]  The defendant appealed.

This Court held that a plaintiff cannot maintain a claim against a governmental agency where the sole proximate cause is the natural accumulation of ice or snow.  Rather, the Court opined that there must exist a combination of ice or snow and a defect that, in tandem, render the sidewalk not reasonably safe for public travel at any time.  In so holding, the Court cited *Hopson v Detroit*[13] for the proposition that ice on a sidewalk, whether on level places or in depressions, constitutes no defect entailing liability.[14]  Accordingly, the Court stated that a governmental agency's failure to remove ice or snow from a highway, by itself, does not constitute negligence.

### ANALYSIS

This case plainly illustrates the inadequacies of the sidewalk defect analysis employed by the Court in *Haliw* when applied, as it was here, to a highway defect.  The theory that a defect must be capable of causing an accident in the absence of ice (or in this case water) should not be applied to high-speed roadways.[15]

The Court of Appeals and three justices of this Court, including my concurring colleague, simply ignore plaintiff's clear allegations and evidence that MDOT's repairs to US-127 were unreasonable and created a defective road surface condition.  As MDOT's own expert, Professor Gilbert Baladi, acknowledged, rutting inevitably occurs on all asphalt pavement with the passage of time.  Plaintiff claims that the road ceased to be self-draining as a direct result of MDOT's repairs because they eliminated the cross-slope/crown and super-elevation needed to drain water from the pavement.  The rutting

---

[11] *Haliw v City of Sterling Heights*, 464 Mich 297 (2001).

[12] The "highway" exception to governmental immunity encompasses liability for injuries arising out of the use of sidewalks.  See MCL 691.1401(e).

[13] *Hopson v Detroit*, 235 Mich 248 (1926).

[14] *Haliw*, 464 Mich at 306-307.

[15] I continue to adhere to my dissenting opinion in *Haliw* and believe that case was wrongly decided.  I nonetheless recognize that the majority opinion remains the law of this state until overturned.

that ensued was not only foreseeable, but was actually known to MDOT, which had scheduled, but not yet performed, repairs to correct the rutting. Consequently, plaintiff asserts, the road became inherently dangerous.

As an initial matter, I question the validity of applying *Haliw* to this case. *Haliw* dealt with the natural accumulation of ice in a sidewalk depression. Here, by contrast, plaintiff contends that water unnaturally accumulated in ruts on the road because of MDOT's defective repairs. Thus, this case is distinguishable from *Haliw*, notwithstanding the fact that they both involve the "highway" exception to governmental immunity.

Even if *Haliw* did apply, importing its analysis to this case is untenable considering plaintiff's assertions. Plaintiff alleged that:

> On or about May 19, 2005, the *actual physical structure of the roadbed's surface,* of the improved portion of the highway at issue, was at that time substantially hazardous and defective, not properly maintained, and/or not in reasonable repair and in a condition reasonably safe and fit for public/vehicular travel, for the following reasons:
>
> > a. excessive wheel track rutting,
> > b. uneven gradient due to excessive wear,
> > c. excessive wear,
> > d. inadequate cross-slope/crown,
> > e. inadequate super-elevation, and
> > f. any other defects the Plaintiff may discover in the future exclusive of those listed here.[16]

Moreover, plaintiff explicitly alleged a defect in the actual physical surface of the road, which, together with the unnatural accumulation of water, proximately caused Mrs. Plunkett's accident:

> The aforementioned defects in the *actual physical structure of the roadbed's surface* caused rainfall to unnaturally collect and pool/stand on the roadway's surface in excessive and dangerous amounts when it rained.
>
> The aforementioned defects in the actual physical structure of the highway, *with the* unnaturally pooled water and/or rainfall, proximately caused Mrs. Plunkett's accident.[17]

---

[16] Plaintiff's third amended complaint, ¶ 30 (emphasis added).

[17] *Id*. at ¶¶ 33-34 (emphasis added).

In my view, plaintiff's complaint sufficiently alleged that a defect *in addition to* the accumulation of water in the ruts proximately caused Mrs. Plunkett's death. Indeed, plaintiff satisfied the explicit requirement of *Haliw* that "an independent defect, other than the accumulation of ice or snow [in this case, water], must be at least a proximate cause of plaintiff's injury in order . . . to recover under [MCL 691.1402(1)]."[18]

To sustain a claim under *Haliw*, "one of the causes [of the alleged injury] at least must be a defect in the sidewalk [here, the roadway] rendering the sidewalk not reasonably safe for public travel *at any time*."[19] As noted above, *Haliw* cited *Hopson* for the proposition that "ice on a sidewalk, whether on level places or in depressions, constitutes no defect entailing liability."[20] Thus, in both *Haliw* and *Hopson*, the complaint was based on the presence of ice. The Court held on each occasion that, when ice is the sole proximate cause of an injury, there can be no liability. Yet *Haliw* explicitly acknowledged that there *may* be liability when there is another defect to which the accident is attributable in part.[21]

The reasoning originally adopted by *Hopson* and extended in *Haliw* is that the sidewalk defects were not a proximate cause of the plaintiffs' injuries because they merely caused ice to accumulate. The question in each case was whether the actual physical condition of the sidewalk was such that "there is at the time any other danger to the steps of the traveler than that arising from the presence of ice or snow; if there be no other danger, then for the time being the way is 'otherwise reasonably safe and convenient.'"[22] Thus, *Haliw* and *Hopson* relied on what is commonly known as the "natural accumulation" doctrine, which dictates that the failure to remove ice or snow from a road does not constitute negligence.[23]

---

[18] *Id.* at 309 n 9.

[19] *Id.* at 307.

[20] *Id.*, quoting *Hopson*, 235 Mich at 250-251.

[21] *Id.*, quoting *Hopson*, 235 Mich at 252.

[22] *Id.* (citation omitted).

[23] See, e.g., *Stord v Transportation Dep't*, 186 Mich App 693, 694 (1991) ("It has long been the law in this state . . . that a governmental agency's failure to remove the *natural accumulations* of ice and snow on a public highway does not signal negligence of that public authority.") (Emphasis added).

Yet the *Haliw* majority recognized that there are cases in which there is a defect distinct from the natural accumulation of ice or snow that can provide the basis for a viable negligence claim. In such cases, *Haliw* remarked that "an independent defect, other than the accumulation of ice or snow, must be at least *a* proximate cause plaintiff's injury in order . . . to recover under [MCL 691.1402(1)]."[24] The Court further noted that under the facts of that case, "the natural accumulation of ice in the depression effectively vitiated the unsafe condition presented by the depression itself."[25] Accordingly, the Court concluded that the depression did not proximately cause the plaintiff's injury because it did not render the sidewalk out of repair within the meaning of MCL 691.1402(1).[26] In a subsequent footnote, the Court stated that the rule "is that a plaintiff cannot recover if an injury is due *solely* to the presence of ice on a sidewalk, even if a depression in the sidewalk caused the accumulation."[27]

It is manifestly unreasonable to conclude in this case, as the Court did in *Haliw*, that the presence of water "effectively vitiated the unsafe condition presented by the depression" in the road.[28] Rather, the difficulty plaintiff had in controlling her vehicle because of the presence of persistent ruts was *compounded* by the presence of the water that the ruts caused to unnaturally accumulate. This situation seems to contemplate the very example set forth by Justice MARKMAN, who authored the opinion of the Court in *Haliw*:

> Even if we were to assume that the claimed depression here represented a condition that rendered the sidewalk "not reasonably safe for public travel" at all times, under the facts of the present case the natural accumulation of ice in the depression effectively vitiated the unsafe condition.

> This point, perhaps, is better illustrated by way of example. Under the first scenario, a six-foot deep hole exists in the middle of a sidewalk. Water naturally accumulates in the top of the hole and, because of the weather conditions, freezes so that, in effect, the hole no longer exists.

---

[24] *Haliw*, 464 Mich at 308 n 9.

[25] *Id*. at 310 n 10.

[26] *Id*. at 311.

[27] *Id*. at 311 n 11 (emphasis added).

[28] *Id*. at 311 n 10.

While walking upon the sidewalk, an individual steps on the ice, slips, and falls, thereby incurring injury. Under this scenario, it can only be said that the sole proximate cause of the slip and fall was the presence of the natural accumulation of ice. A different outcome, however, would present under a scenario where the same six-foot hole in the sidewalk is present, but the ice forms several inches below the top of the hole. While walking upon the sidewalk, an individual steps on the edge of the hole, which causes him to momentarily lose his balance. While attempting to remain upright, this individual slips on the ice that had naturally accumulated in the hole. Under this scenario, *it must be said that, in tandem, the defect and the natural accumulation of ice combined to proximately cause the slip and fall.*[29]

When repairs are defectively performed such that they eliminate design features and prevent a road from naturally draining, an ensuing accumulation of water in admittedly foreseeable ruts can hardly be deemed "natural." Therefore, the ruts caused by the allegedly defective repairs caused an unnatural impoundment of water that constitutes a foreseeable, hazardous condition that plaintiff claims was a proximate cause of Mrs. Plunkett's accident. These nuanced allegations, lost on a majority of this Court, are sufficient to maintain a claim under MCL 691.1402(1), which requires MDOT to "maintain the highway *in reasonable repair* so that it is reasonably safe and convenient for public travel."

It defies logic to conclude that a repair that actually eliminates design features necessary to prevent the accumulation of water is reasonable. Equally ungrounded in common sense is this conclusion of the Court of Appeals: a failure to correct a known rutting condition that, in combination with an unreasonable repair, caused the highway to be unsafe for travel, did not constitute a violation of MDOT's statutory duty to perform a reasonable repair. At the very least, there exists a genuine issue of fact on that question such that summary disposition is inappropriate.

Finally, perhaps the Court of Appeals most egregious error was its baseless conclusion that plaintiff's claim must fail because it is premised on a design defect.[30] One need not look further than paragraph 23 of plaintiff's third amended complaint to realize this conclusion is incorrect. There, plaintiff explicitly states, "Initially, the improved portion of the highway, designed for vehicular travel, was *correctly designed*

---

[29] *Id* (emphasis added).

[30] See *Plunkett*, 286 Mich App at 186-187.

*and built*, and in a condition reasonably safe and fit for vehicular/public travel at all times."[31] (Emphasis added). This allegation, standing alone, belies the Court of Appeals conclusion that plaintiff's complaint was premised upon a design defect. Yet the Court of Appeals also failed to comprehend the substance of plaintiff's subsequent allegations in paragraphs 27-29. There, plaintiff averred that MDOT's "micro[]surfacing [repair] projects negligently altered the cross-slope/crown and/or super-elevation." Thus, in reality, plaintiff alleged that the *correctly designed and constructed* road was later unreasonably repaired by MDOT's actions, which proximately caused Mrs. Plunkett's death.

## CONCLUSION

The Court of Appeals erred in numerous respects by reversing the trial court's denial of defendant's motion for summary disposition. The Court of Appeals (1) erroneously concluded that plaintiff's claims were based on design defects, (2) erroneously concluded that the rutting in US-127 was a not a persistent defect of which MDOT should have had notice, and (3) erroneously concluded that there exists no genuine issue of fact as to whether Mrs. Plunkett's accident was proximately caused in part by MDOT's defective repairs, in conjunction with the unnatural accumulation of water in ruts. By denying plaintiff's application for leave to appeal, a minority of this Court, whose votes are sufficient to carry the day in this case (owing to the recusal of Justices CAVANAGH and ZAHRA), has chosen to ignore these errors rather than correct them. I dissent from its decision to do so and would instead reverse the Court of Appeals and remand this case to the trial court for further proceedings.

HATHAWAY, J., would grant leave to appeal.

CAVANAGH, J., did not participate due to a familial relationship with counsel of record.

ZAHRA, J., did not participate because he was on the Court of Appeals panel.

---

[31] See also Plaintiff's third amended complaint at ¶ 26 (". . . the improved portion of the highway, designed for vehicular travel, *was correctly designed and built . . . .*") (Emphasis added).



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

March 11, 2011

p0308

Clerk