*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CHIQUITA ELLIS,

Plaintiff-Appellee,

v

CITY OF DETROIT,

Defendant-Appellant.

UNPUBLISHED
February 25, 2020

No. 346753
Wayne Circuit Court
LC No. 17-015503-NO

Before: REDFORD, P.J., and CAVANAGH and SERVITTO, JJ.

PER CURIAM.

Defendant, City of Detroit, appeals as of right the trial court's denial of its motion for summary disposition of plaintiff, Chiquita Ellis's complaint, on governmental immunity grounds. We affirm.

## I. FACTUAL BACKGROUND

On October 13, 2016, plaintiff stepped backward into a pothole on Pingree Street, tripped, fell, and injured her right knee requiring surgery. Plaintiff gave defendant notice of the defective condition and later sued alleging that defendant failed to maintain the street in reasonable repair as required under MCL 691.1401 *et seq.* After the parties conducted discovery, defendant moved for summary disposition under MCR 2.116(C)(7) on the ground that government immunity barred plaintiff's claim. The trial court denied defendant's motion.

## II. STANDARD OF REVIEW

We review de novo the applicability of government immunity. *Plunkett v Dept of Transportation*, 286 Mich App 168, 180; 779 NW2d 263 (2009). Whether the highway exception applied to a case is a question of law we review de novo. *Id.* We also review de novo a trial court's interpretation of a statute. *Id.* We review de novo a trial court's grant or denial of summary disposition under MCR 2.116(C)(7). *Poppen v Tovey*, 256 Mich App 351, 353; 664 NW2d 269 (2003). In analyzing a motion for summary disposition under MCR 2.116(C)(7), the trial court must accept as true the contents of the complaint unless contradicted by affidavits, depositions, admissions, or other documentary evidence submitted to the trial court by the movant. *Maiden v*

-1-

*Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). "The substance or content of the supporting proofs must be admissible in evidence." *Id*. "A motion brought pursuant to MCR 2.116(C)(7) should be granted only if no factual development could provide a basis for recovery." *Cole v Ladbroke Racing Michigan, Inc*, 241 Mich App 1, 6-7; 614 NW2d 169 (2000) (citation omitted).

## III.  ANALYSIS

Defendant argues that the trial court erred because MCL 691.1402 and 691.1403 barred plaintiff's claim.  Defendant contends that it maintained Pingree Street in reasonable repair and reasonably safe for public travel and that it neither knew nor should have known of the existence of any defect.  We disagree.

Under the governmental tort liability act, MCL 691.1401 *et seq*., "a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function."  MCL 691.1407(1).  In *Bernardoni v City of Saginaw*, 499 Mich 470, 473; 886 NW2d 109 (2016), our Supreme Court explained:

> An exception to this immunity is found in MCL 691.1402, the highway exception, that allows individuals to "recover the damages suffered by him or her" resulting from a municipality's failure to keep highways . . . "in reasonable repair and in a condition reasonably safe and fit for travel . . . ." [Quoting MCL 691.1402(1).]

Road imperfections rise to the level of a compensable defect when they render the highway not "reasonably safe and convenient for public travel."  *Wilson v Alpena Co Rd  Comm*, 474 Mich 161, 168; 713 NW2d 717 (2006).  Public travel extends to pedestrian travel.  *Nawrocki v Macomb Co Rd Comm*, 463 Mich 143, 162-170; 615 NW2d 702 (2000).  "[W]hile MCL 691.1402(1) only imposes on the governmental agency the duty to 'maintain the highway in reasonable repair,' in order to successfully allege a violation of that duty, a plaintiff must allege that the governmental agency was on notice that the highway contained a defect rendering it not 'reasonably safe and convenient for public travel.' "  *Wilson*, 474 Mich at 168.

Regarding notice, MCL 691.1403 specifies:

> No governmental agency is liable for injuries or damages caused by defective highways unless the governmental agency knew, or in the exercise of reasonable diligence should have known, of the existence of the defect and had a reasonable time to repair the defect before the injury took place.  Knowledge of the defect and time to repair the same shall be conclusively presumed when the defect existed so as to be readily apparent to an ordinarily observant person for a period of 30 days or longer before the injury took place.

To invoke the highway exception, a plaintiff must establish that the defect existed at least 30 days before the accident.  *Bernardoni*, 499 Mich at 474.  Our Supreme Court explained further that "the question of whether a street defect, otherwise actionable against the municipality, has existed a sufficient length of time and under such circumstances that the municipality is deemed to have notice is a question of fact, and not a question of law."  *Id*. (citation omitted).

In *Wilson*, 474 Mich at 168-170 (citation omitted, emphasis in original), our Supreme Court clarified:

> The governmental agency does not have a separate duty to eliminate *all* conditions that make the road not reasonably safe; rather, an injury will only be compensable when the injury is caused by an unsafe condition, of which the agency had actual or constructive knowledge, which condition stems from a failure to keep the highway in reasonable repair.
>
> If the agency knows, or should have known, of the existence of the defect or condition that makes the road defective, i.e., not reasonably safe for public travel, it has only a reasonable time to repair it. If it does not do so, it can be held liable for injury or damage caused by that defect. The Legislature has also indicated that knowledge and time enough to repair are conclusively presumed when the defect has been readily apparent to an ordinarily observant person for 30 days or longer before the injury.

In this case, the record reflects that on an unspecified date during the spring of 2016, defendant's Department of Public Works' Assistant Manager of Street Maintenance personally made a visual inspection of Pingree Street between Dexter Avenue and Quincy Street which included the location of plaintiff's fall. Based on his 2016 inspection, the department placed Pingree Street on the list for resurfacing and it selected the street for inclusion in defendant's 2017 annual repaving projects. He testified regarding the conditions an inspector had to find upon inspection to warrant repaving and his testimony clarified that, if an inspector found that a street fell below the Pavement Surface Evaluation and Rating (PASER) surface rating system's Level 4 (Fair), such street would be considered as needing resurfacing.

His affidavit attached a copy of the PASER rating system used by the Department of Public Works which distinguished between 10 degree levels of visible distress in road surfaces. Under Level 4, a street's visible distress included:

> Severe surface raveling. Multiple longitudinal and transverse cracking with slight raveling. Longitudinal cracking in wheel path. Block cracking (over 50% of surface). Patching in fair condition. Slight rutting or distortions (1/2" deep or less.)

Streets receiving a Level 4 rating are deemed to benefit from repaving with a structural overlay of two or more inches of paving material. Each level, from Level 3 (Poor) to Level 1 (Failed), specified greater severity of visible distress requiring the department to take various degrees of action from milling and removal of the deterioration before resurfacing to total reconstruction of the road. Although the assistant manager did not indicate in his affidavit the PASER rating he reported in spring of 2016 regarding the condition of Pingree Street, he averred that he noted several filled potholes and admitted that more potholes could develop around such filled potholes or cracks. His inspection occurred months before plaintiff's October 13, 2016 accident.

Plaintiff relied on defendant's assistant manager's testimony to support her claim that defendant had actual and constructive notice of Pingree Street's severe disrepair at least 30 days before her accident. Plaintiff provided unrebutted testimony regarding the condition of the street

at the time she fell. She also presented photos of the street's deteriorated condition and the unrepaired pothole in which she alleged that she fell. The trial court could reasonably infer from the testimony in this case and the evidence presented by plaintiff that, well in advance of plaintiff's fall, Pingree Street suffered from such significant disrepair that, under defendant's own rating system, it required resurfacing. The fact that defendant's assistant manager inspected the street supported plaintiff's contention that defendant had actual knowledge of its poor condition. The trial court appropriately concluded that the manager's testimony undermined defendant's assertion that it reasonably maintained the street and lacked knowledge of its defective and unsafe condition. The evidence established that defendant knew months before plaintiff fell that the street's condition required resurfacing and defendant had constructive knowledge of its poor condition at the time of plaintiff's fall. The record reflects that defendant produced no evidence that defendant performed any maintenance on Pingree Street from the date of the assistant manager's spring 2016 inspection until the date in 2017 when it resurfaced the street. No evidence established that defendant revisited Pingree Street, patched any potholes or took any steps to repair the observed existing defects at any time. Defendant presented no evidence that the street was in a reasonably safe condition 30 days before plaintiff fell. The record reflects that plaintiff stepped into an unpatched pothole and fell. She supported her claim with photos of the street after her fall that depicted several large potholes and specifically identified the pothole she claimed caused her fall. Defendant presented no evidence that Pingree Street at the location and at the time of her fall was in reasonable repair and reasonably safe for public travel. No evidence established that defendant took any steps to rectify the defects it discovered during the 2016 inspection a few months before plaintiff's fall. Further, defendant presented no evidence that rebutted plaintiff's testimony regarding the defective condition of Pingree Street on the date and at the location of her fall.

The trial court did not err by denying defendant's motion for summary disposition on governmental immunity grounds. The evidence established the existence of genuine issues of material fact regarding both the condition of Pingree Street at the time and place of plaintiff's fall and whether defendant knew or had reason to know of the defective condition.

Affirmed.

/s/ James Robert Redford
/s/ Mark J. Cavanagh
/s/ Deborah A. Servitto

-4-